FILED
2016 Aug-08  PM 03:06
U.S. DISTRICT COURT
N.D. OF ALABAMA


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

LASHONJA GIBBS,              )
                            )
        Plaintiff,          )
                            )
    vs.                     )          7:15-CV-858-LSC
                            )
CAROLYN W. COLVIN,          )
Commissioner of Social Security,   )
                            )
        Defendant.          )

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Lashonja Gibbs, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Gibbs timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Gibbs was thirty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education. Her past work experience was as a home health aide for two months. (Tr. at 308). Ms. Gibbs

alleged disability due to a learning disability, thyroid problems, depression, headaches, and back pain. (Tr. at 125, 142, 206).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Gibbs has not engaged in SGA since the alleged onset of her disability. (Tr. at 18). According to the ALJ, Plaintiff has the following impairments that are not severe individually, but are severe in combination: nonspecific headache, nonspecific dizziness, rule out learning disability, rule out mood disorder, possible borderline intellectual functioning (with unlikely diagnosis of mild mental retardation), anxiety, unspecified disorder of the thyroid with history of noncompliance presenting hazards to health, heat intolerance secondary to hyperthyroidism, obesity, edema, and depressive disorder. (*Id.*) He further found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 19.) The ALJ did not find Ms.

Gibbs's allegations to be entirely credible, and he determined that she has the following RFC:

> to perform medium work . . . except that the claimant can sit, stand, and walk at least three hours each without interruption, and a total of six hours each over the course of an eight-hour workday. The claimant suffers no manipulative limitation. The claimant can frequently use her lower extremities for pushing, pulling and the operation of controls. The claimant can frequently climb ramps and stairs. The claimant cannot climb ladders, ropes, poles, or scaffolds. The claimant can frequently balance, stop, kneel, crouch, and crawl. The claimant can frequently work in extreme cold. The claimant can occasionally work in extreme heat. The claimant can frequently work in wetness. The claimant can occasionally work in humidity. The claimant can frequently work while exposed to dusts, gases, odors, and fumes. She cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant cannot with operating hazardous machinery. The claimant can occasionally operate motorized vehicles. The claimant cannot perform work activity that requires reading as a specific requirement; however, the claimant can understand and respond to common written signs, such as warning and exit signs. The claimant possesses the concentration, persistence, and pace necessary to understand, remember, and carryout simple instructions, in the performance of simple, routine, and repetitive work activity, as well attend to customary work pressures over the course of an eight-hour workday with the following exceptions. She can perform production rate work. However, she cannot perform work that requires her to respond to rapid and/or multiple demands. Changes in her work activity and/or work setting must be infrequent and gradually introduced. The claimant can respond appropriately to supervision; however, she is better suited for and can perform work requiring only occasional supervision. She can frequently interact with coworkers, so long as interaction is casual. She can occasionally interact with the public, so long as interaction is casual.

(Tr. at 23-24).

According to the ALJ, Ms. Gibbs has no past relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations. (Tr. at 34). He determined that "transferability of job skills is not an issue because the claimant does not have past relevant work." (*Id.*) The ALJ relied on testimony from a vocational expert ("VE") to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform, given her limitations, including day worker, sandwich maker, laundry worker, hand packager, order picker, warehouse worker, and church janitor. (Tr. at 34-35). The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, since December 12, 2011, the date the application was filed." (Tr. at 35).

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).   This Court gives

deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881,

883 (11th Cir. 1984)).   Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Gibbs alleges that the ALJ's decision should be reversed and remanded for three reasons. First, she contends the ALJ erred at step two of the sequential analysis by finding none of her impairments severe on its own, although he found that her impairments were severe in combination. Second, she contends the ALJ erred in giving little weight to the opinion of Donald W. Blanton, Ph.D., a one-time examiner procured by her attorney, who diagnosed her with mild mental retardation. Third, Plaintiff contends that the ALJ erred at step three of the sequential analysis by finding that she did not meet Listing 12.05C for mental retardation.

### A.   Finding at Step Two

Plaintiff alleges error at step two of the sequential evaluation, where the ALJ concluded that Plaintiff did not have any severe impairments but, rather, found that her non-severe impairments, including headaches, dizziness, rule out learning disability, rule out mood disorder, possible borderline intellectual functioning (with unlikely diagnosis of mild mental retardation), anxiety, unspecified disorder of the

thyroid, obesity, edema, and depressive disorder, were severe in combination. (Tr. at 18). Finding in Plaintiff's favor at step two, the ALJ thus moved on to step three.

Plaintiff bears the burden of proving that she has a severe impairment or combination of impairments. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (a claimant must bear the burden "at step two that he has a medically severe impairment or combination of impairments"). An impairment or combination of impairments is severe if it significantly affects a claimant's ability to perform work-related activities, irrespective of age, education, and work experience. *See* 20 C.F.R. §§ 416.920(c), 416.921(a) (2015); *Bridges*, 815 F.2d at 625. Work-related activities include, but are not limited to physical functions such as standing, walking, lifting, sitting, bending, and stooping, as well as capacities for hearing and seeing, use of judgment, and understanding, remembering, and carrying out instructions. *See* 20 C.F.R. § 416.921(b). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work." *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986). In addition, the regulations explain that, under the special technique used to evaluate mental impairments, claimants are rated in four broad functional areas: activities of

daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. § 416.920a(c)(4).

As an initial matter, what Plaintiff actually argues is that the ALJ erred by repeatedly describing her impairments as "non-disabling" at step two rather than "non-severe." However, this argument lacks merit because the section of the ALJ's opinion quoted by Plaintiff in support of this argument is taken from the ALJ's discussion at step three, not step two. At step three, an ALJ properly considers whether a claimant is disabled because her condition meets or medically equals a Listing. *See* 20 C.F.R. § 416.920(a)(4)(iii).

In any event, even if substantial evidence did not support the ALJ's step two finding that none of Plaintiff's impairments was severe on its own, any error is harmless because the ALJ ultimately found in Plaintiff's favor and moved on to the next step of the sequential evaluation. In other words, and as previously noted, if the plaintiff does not have a severe impairment at step two, the plaintiff is found not disabled and the analysis stops, but if the plaintiff does have a severe impairment or combination of impairments at step two, the analysis proceeds to the third step. Harmless error analysis applies where substantial evidence supports the ALJ's conclusions and some legal error occurred that was not case dispositive. *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 746 n. 3 (11th Cir. 2008).

In *Burgin v. Commissioner of Social Security*, the Eleventh Circuit held, "The finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." 420 F. App'x 901, 902 (11th Cir. 2011). The court further noted that even if the ALJ had erred in finding that the claimant's edema, sleep apnea, and obesity were not severe, "that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process." *Id.* at 903; *see also Heatly v. Commissioner of Social Security*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Even if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires.").

Further, substantial evidence supports the ALJ's decision to characterize each of Plaintiff's impairments as non-severe on its own but severe in combination. For instance, the ALJ properly found that Plaintiff's headaches and "dizziness" were non-severe impairments because Plaintiff did not require any treatment for these conditions during the relevant period.  (Tr. at 19). The ALJ noted that Plaintiff reported her headaches and "light-headedness" to Dr. Boggs, the consultative mental health examiner, but told him that she was not seeing any

physicians or taking any medication or supplements. (Tr. at 19, 256-57). Similarly, she reported headaches and non-specific dizziness to Dr. Pasha, the consultative medical examiner, but reported no medications other than over-the-counter Tylenol. (Tr. at 252). Dr. Pasha diagnosed non-specific headaches and history of non-specific dizziness. (Tr. at 254).

Additionally, the ALJ properly found Plaintiff's thyroid condition to be non-severe because Plaintiff was not compliant with her treatment and reported not taking her medications for periods from one month up to three years, and because she did not require hospitalizations or emergency care for the condition during the relevant period. (Tr. at 20-21). The regulations state that a claimant will not be found to be disabled if she does not follow her prescribed treatment without good reason. *See* 20 C.F.R. § 416.930; *see also Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (a plaintiff's noncompliance with prescribed treatment may be used as a factor for discounting allegations of disability). Specifically, the ALJ considered that, in March 2012, Plaintiff told Dr. Boggs she had not taken her supplements for her thyroid condition in two or three years. (Tr. at 20, 257). The ALJ then found that Plaintiff sought treatment for a thyroid condition from Dr. Walton, her primary care physician, in May 2012, but, at that time, she reported she had not had any medical care or taken her Synthroid for over two years. (Tr. at

20, 261). Dr. Walton diagnosed an unspecified disorder of the thyroid and "personal history of noncompliance with medical treatment presenting hazards to health." (Tr. at 269). Dr. Walton performed lab work, recommended weight loss, prescribed Synthroid, and told Plaintiff to follow up with him in four weeks. (Tr. at 263, 268-69). However, Plaintiff did not return to Dr. Walton until ten months later, in March 2013. (Tr. at 20, 304). At that time, Plaintiff complained only of symptoms related to depression and reported that she had not taken her Synthroid for one month. (Tr. at 304). Dr. Walton restarted her on Synthroid. (Tr. at 306). When Plaintiff saw Dr. Walton in September 2013, she again complained of depression but not her thyroid condition. (Tr. at 300). Dr. Walton confirmed the diagnoses of unspecified disorder of the thyroid and personal history of noncompliance with medical treatment presenting hazards to health. (Tr. at 302-03).

With regard to her edema, the ALJ found that Plaintiff's medication helped with the swelling. (Tr. at 21). If an impairment can be treated effectively with medication, it is less likely to be considered disabling. *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). Specifically, the ALJ noted Dr. Walton's findings of bilateral trace pedal edema of the foot and ankle and diagnosis of edema, as well as his notation of personal history of noncompliance with medical treatment

presenting hazards to health with regard to the edema. (Tr. at 21, 269). Although Plaintiff testified at her hearing that she took medication for the swelling in her legs and feet, on examination in 2013, Dr. Walton found no edema. (Tr. at 52, 240, 300-07). Thus, the ALJ properly concluded that Plaintiff's edema was controlled by medication.

As for her mental conditions, the ALJ properly concluded that Plaintiff had only mild limitations in the areas of daily living, no episodes of decompensation, and moderate limitations in the areas of social functioning and concentration, persistence, and pace. (Tr. at 23). With regard to daily living, Plaintiff was able to care for her personal needs, prepare meals, shop, drive, and manage her own finances. (Tr. at 23, 156-58, 164-66, 257, 309). With regard to social functioning, she could communicate clearly, demonstrated cooperative behavior, and sustained some social contacts but had difficulty interacting with others including authority figures. (Tr. at 23). Specifically, the ALJ found that she was able to answer questions at her consultative examinations without assistance and make visitation trips with her church to nursing homes and other places of need. (Tr. at 19, 257). With regard to persistence, pace, and concentration, Dr. Boggs concluded that Plaintiff was able to follow directions and sustain tasks. (Tr. at 23, 258).

In sum, any error with regard to step two is harmless because the ALJ found in Plaintiff's favor at that step, and in any event, substantial evidence supports the ALJ's finding that Plaintiff's impairments, individually, do not significantly affect her ability to perform work-related activities and, therefore, are non-severe.

### B.      Opinion of the One-Time Examining Physician

Plaintiff takes issue with the ALJ's decision to give little weight to the opinion of Dr. Blanton, who examined Plaintiff at the request of her attorney on September 18, 2013. (Tr. at 308.) Dr. Blanton administered an IQ test, the Wechsler Adult Intelligence Scale (WAIS-III), on which he reported that Plaintiff scored a 63, which placed her in the mild range of mental retardation. He opined that she was functionally illiterate and that she manifested deficits in adaptive functioning prior to the age of twenty-two, including in the areas of communication and self-care. (Tr. at 309-10). He further opined that she had marked limitations in her ability to respond to customary work pressure, respond to supervision, and maintain attention and concentration for two-hour periods. (Tr. at 310).

The ALJ is procedurally required to articulate the weight given to different medical opinions and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight to be afforded a medical opinion regarding the nature and severity of a plaintiff's impairments depends, among

other things, upon the examining and treating relationship the medical source had with the plaintiff, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Unlike opinions from a claimant's treating physician, the opinions of a one-time examiner or of a non-examining source are not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Furthermore, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The ALJ considered Dr. Blanton's report, assigned it little weight, and articulated several reasons for doing so, namely that it was inconsistent with Dr. Blanton's own findings as well as the other evidence of record, including findings from several treating and examining physicians. (Tr. at 19-20, 22, 31-33). Substantial evidence supports the ALJ's conclusions.

For example, despite Dr. Blanton's diagnosis of mental retardation, he found upon examination that Plaintiff was alert and oriented; her thoughts and conversations were logical; her associations were intact; she spent most of her days walking, watching television, and doing housework; she was able to cook and clean

(albeit slowly), shop, and handle her own money; and she had a driver's license. (Tr. at 308-09). Thus, Dr. Blanton's opinions contradicted his own notes from his personal mental health evaluation of Plaintiff.

Furthermore, Plaintiff's "dubious" behavior with other objective examiners and medical personnel stands in suspicious contrast to Dr. Blanton, who concluded that his test results were valid. For example, the ALJ noted the inconsistency between the report from Dr. Boggs who found Plaintiff's malingering on IQ testing "obvious," and Dr. Blanton's determination that his test results were valid. (Tr. at 33, 257, 309). More specifically, Dr. Boggs opined that Plaintiff did not put forth much effort during IQ and mental health testing and that the test results did not accurately reflect her functioning; further, he stated that "[t]here was such a dearth of response on the IQ scale that her malingering was obvious." (Tr. at 19-20, 256, 257-58). He opined that, by history, she functioned in the low average to borderline intellectual level. (Tr. at 257). Moreover, Dr. Pasha reported only mild anxiety and no significant depression when she examined Plaintiff, and Dr. Walton, Plaintiff's treating physician, consistently found on examination that, despite her complaints of depression, she was oriented times four; she had normal insight and judgment; her memory was intact; and her mood and affect were appropriate. (Tr. at 253, 262-63, 269, 302, 306).

Finally, the ALJ considered that, despite Dr. Walton's referral to a mental health specialist in 2013, Plaintiff had not sought treatment for her allegedly disabling mental health symptoms, and had provided conflicting statements about why she had not sought such treatment. (Tr. at 21-22). Notably, at the administrative hearing, she testified she had not gone to the mental health clinic because "something came up." (Tr. at 21.) However, she told Dr. Walton she did not make an appointment with the mental health clinic because she had been out of town, but, just days after seeing Dr. Walton, she told Dr. Blanton, the one-time examiner, she missed her mental health appointments because she had no money for transportation. (Tr. at 21, 50, 300, 308).

Based on the foregoing, the ALJ properly found that Dr. Blanton's opinion that Plaintiff was disabled due to depression, anxiety, and life-long mental retardation was entitled to little weight.

## C.    Listing 12.05C (Mental Retardation)

Plaintiff asserts that she meets Listing 12.05C and thus should have been deemed disabled at step three. A plaintiff is conclusively presumed to be disabled at step three of the sequential evaluation if she meets or equals the level of severity of a listed impairment, or Listing. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).   In order to meet a Listing, the plaintiff must meet all of the specified

medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets *some* of the criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885 (1190).  The plaintiff bears the burden of demonstrating that she meets a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

> Listing 12.05C provides:
>
> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A. Thus, to satisfy Listing 12.05C, a plaintiff must show the following: (1) deficits in adaptive functioning that initially manifested during the developmental period (prior to age twenty-two); (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) an additional impairment other than intellectual functioning that imposes an additional and significant work related limitation of function. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00, 12.05. As for deficits in adaptive functioning manifesting before the age of twenty-two, the regulations state that "adaptive activities" include activities of daily living such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, and caring for personal needs. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C(1). The Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") further explains that, "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone of their particular age group, sociocultural background, and community setting." American Psychiatric Ass'n, DSM-IV, 42 (4th ed. 2000, Text Rev.).

For the following reasons, the ALJ's decision that Plaintiff failed to meet all of the requirements of Listing 12.05C is supported by substantial evidence. With regard to the "significant subaverage intellectual functioning" prong, Dr. Boggs,

the consultative examiner, administered an IQ test on March 20, 2012, but declined to score it because "there was such a dearth of response on the IQ scale that her malingering was obvious." (Tr. at 22, 27-28, 257-58). Dr. Boggs testified that Plaintiff printed on her test form out of range where she could be observed, missed the easy items, and moved on to the advanced items prematurely. (Tr. at 257-258). Dr. Boggs opined that, based upon her history, Plaintiff functioned in the low average to borderline intellectual range, not the mentally retarded range. (Tr. at 22, 27, 257). The ALJ gave Dr. Boggs's opinion substantial weight because it was supported by his own examination and testing, as well as the record as a whole. (*Id.*) Over a year later, Dr. Blanton, the one-time examiner procured by Plaintiff's attorney, administered the same IQ test to Plaintiff, which yielded a full scale IQ score of 63. (Tr. at 311). However, the ALJ rejected this score, noting that Dr. Boggs had found it obvious that Plaintiff was malingering, while the consultant procured by Plaintiff's attorney declared his results valid. (Tr. at 33).

With regard to whether Plaintiff suffers from significant deficits in adaptive functioning that manifested before age 22, the evidence showed that Plaintiff has a driver's license and drives (tr. at 165, 257, 309), shops (tr. at 158, 166, 257, 309), cooks meals (tr. at 157, 165, 309), cares for her daughter (tr. at 156, 164, 257), lives independently (tr. at 155, 163), pays bills and manages her finances (tr. at 158, 166,

309), goes to church (tr. at 158-59, 165, 309), does household chores (tr. at 157, 165, 257, 309), and cares for her own personal needs (tr. at 156, 164). In questioning Dr. Blanton's diagnosis that Plaintiff is mentally retarded, the ALJ stated: "[Dr. Blanton's] opinion is grossly inconsistent with the evidence of record. Per his own reports, [Ms. Gibbs] has a driver's license, she shops, and she cares for her children. There is no evidence to support his opinion that she was mentally disabled prior to age 22." (Tr. at 33). In any event, even if the ALJ were to have accepted Dr. Blanton's diagnosis of mental retardation, that diagnosis is insufficient, standing alone, to show that Plaintiff meets Listing 12.05(C). *See* 20 C.F.R. § 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis.  To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria of the listing.").

Plaintiff makes several arguments in support of her claim that she is mildly mentally retarded. She relies on *Hodges v. Barnhart* for the proposition that a valid, low IQ score creates a rebuttable presumption of: (1) a fairly constant IQ throughout life; and (2) deficits in adaptive functioning before the age of twenty-two. 276 F.3d 1265, 1268-69 (11th Cir. 2001). However, as discussed above, Plaintiff has not established a valid IQ score, and, therefore, is not entitled to that

presumption. Moreover, the Eleventh Circuit has explained that, to overcome the presumption of a constant IQ throughout a claimant's life, the ALJ properly looks at the claimant's daily activities and adaptive functioning. *See Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986). As discussed above, Plaintiff's daily activities show that she did not have deficits in adaptive functioning and, therefore, even if her IQ score were valid, she still fails to meet all the criteria of Listing 12.05C.

Plaintiff also identifies evidence that she argues supports a finding that she suffers from the deficits in adaptive functioning requirement of Listing 12.05C. Plaintiff argues that her ability to drive and shop for herself does not preclude a diagnosis of intellectual disability. She cites the Social Security Administration's September 15, 2014 Administrative Message which provides, "The ability to drive, engaging in common everyday activities, and previous employment do not preclude a diagnosis of Intellectual Disability, and do not necessarily preclude a finding of disability under listing 12.05." While that may be true in some cases, the ALJ may look at a plaintiff's daily activities to determine whether she has deficits in adaptive behavior before age twenty-two. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00C(1); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 984-85 (11th Cir. 2014) (evidence claimant worked part-time, drove, and cared for personal needs, as well

as doctors' opinions that her functional capacity was better than suggested by her

IQ score, supported finding that she did not have deficits in adaptive functioning);

*O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456 (11th Cir. 2015) (despite low IQ,

evidence the plaintiff worked for many years, did light yard work, looked after his

children, took care of his personal needs, drove, and attended church, supported

finding that he did not have deficits in adaptive functioning). Plaintiff also

emphasizes that her school records indicate that she repeated first grade and sixth

grade and quit school during eleventh grade. (Tr. at 226, 227, 229). She states that

according to testing on the WRAT-R administered by Dr. Blanton in September

2013, she has spelling and arithmetic skills on a fourth grade level and reading skills

on a fifth grade level. (Tr. at 309). She points out that while she did say on her

disability function report that she can go to a grocery store and pay, she cannot

handle money. (Tr. at 49, 166). Plaintiff maintains that she is not able to handle a

savings or checking account and has never written a check. (*Id.*) She emphasizes

that she testified at her hearing that her mother did the cooking and her friends

took care of cooking and cleaning for her (tr. at 48, 165), which she argues

undermines the ALJ's conclusion that she has "independent daily activities of

cooking and cleaning." (Tr. at 23). Plaintiff also maintains that she entered special

education classes at an unspecified point in her schooling, that she had to take the

oral driver's license test three times before passing it, and that she cannot care for her child without her mother's assistance. (Tr. at 49, 164, 168, 170).

However, Plaintiff's reference to this evidence is irrelevant, given the standard by which this Court must review the ALJ's decision. The issue before this Court is not whether there is substantial evidence within the record to support a finding that Plaintiff meets the deficits in adaptive functioning requirement of Listing 12.05C. Rather, the issue before this Court is whether there is substantial evidence within the record to support the ALJ's decision that Plaintiff lacked the necessary deficits in adaptive functioning to meet Listing 12.05C. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Indeed, even if some of the evidence of record preponderates against the ALJ's findings, this Court must still affirm the ALJ's decision if substantial evidence supports his findings. *See id.*; *Parker*, 793 F.2d at 1181 ("'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'") (quoting *Consolo*, 383 U.S. at 620). Substantial evidence supports the ALJ's finding that Plaintiff did not meet the deficits in adaptive functioning requirement of Listing 12.05C. *See Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813 (11th Cir. 2009) (plaintiff's ability to hold several jobs, dress and bathe, manage money, read, and communicate effectively

provided evidence that plaintiff did not suffer from mental retardation). Thus, whether the record contains other evidence that could suggest Plaintiff met the deficits in adaptive functioning requirement of Listing 12.05C is irrelevant.

For these reasons, the Court is of the opinion that the ALJ's decision that Plaintiff did not meet Listing 12.05C at step three of the sequential evaluation process is supported by substantial evidence.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Gibbs's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON AUGUST 8, 2016.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704